Houston *v.* Howard.

---

### A. B. HOUSTON *v.* M. E. HOWARD.

*Sale.   Change of Possession.   Attaching Creditor.   Damages.*

It is well settled in this state that a sale or pledge of chattels, which from their nature or situation it is not impracticable to move, will, if not accompanied by a manifest and substantial change of possession, be voidable by attaching creditors.

Houston *v.* Howard.

The ostensible nature and purpose of a change of possession as well as its duration should be considered in determining whether it was so manifest and substantial as to be unprejudiced by a return of the property to the control and possession of the original owner.

In March R. delivered all his assets, including two wagons, to H., to enable H. to realize out of their avails the payment of certain debts. H. sells part of them and applies on his debts. In June thereafter he allows the wagons to return to R.'s possession, although the debts were not fully paid, H. believing that he could not lose any rights by so doing. *Held*, that the wagons after their return to R.'s hands, and while in his possession, are attachable as R.'s property.

The attachment would not be less valid because H. had been previously summoned as R.'s trustee on account of these wagons at the suit of the creditor who makes the attachment, nor would its validity be altered by H.'s having become responsible for the debt, unless R. was also discharged.

The extent of damages which the attaching officer who sues the real owner for a trespass in unlawfully removing property from his attachment, may recover, is the amount of debt, costs and interest due upon the execution, which the property was held to pay, and such trespasser not being a party to the execution cannot, because the officer's fees on the execution were not seasonably endorsed by items, object to their allowance as part of the damages.

TRESPASS for two wagons, one a meat wagon and one an express wagon attached by the plaintiff on a writ of attachment in favor of Michael Grout against Freeman Reed, on a writ dated June 2d, 1864, and served          1864.

The plaintiff introduced evidence tending to prove that the property attached, including a horse, belonged to said Reed at the time of the attachment, and long before, and that it was in Reed's possession, and that he sold the horse, which left a balance due on the execution less than the value of the property. The plaintiff proved the value of the wagons and the taking by the defendant a few days after the attachment.

It appeared that Reed failed in March, 1864, and assigned all his property, books, etc., to one Metcalf, and that Metcalf took possession of the two wagons and locked them up, and also took possession of Reed's meat market, and put a man by the name of Cady in possession of the same ; that Reed was then indebted to Howard in the sum of about $500., and he procured a writ of attachment from Fisk & Johnson under the circumstances hereinafter stated, and trusteed Metcalf and attached the property subject to the liens then on it ; there being prior attachments in suits brought by said Johnson

as attorney; the liens then on the property being several hundred dollars. Immediately after Howard, the defendant, had commenced his suit, said Michael Grout commenced his action against Reed and trusteed Metcalf, said suit being commenced by Fisk & Johnson, as hereinafter stated.

After these suits were brought Howard made the following trade, to-wit : he bought in all the claims on the property prior to his, and paid off the same, amounting to $1325.95 and took an assignment and possession of all the property as security, and took a warranty deed of the real estate of said Reed. Metcalf delivered the possession of the wagons to Howard on the 9th day of March, 1864, and put him in possession of the meat market, horses and wagons and other personal property at that time. In the property thus passed from Reed to Metcalf, and from Metcalf to Howard were the account books of said Reed—Reed still owning the property subject to Howard's lien for what he had paid. Johnson made all the writings, and Fisk & Johnson received the books of Reed for collection for the benefit of Howard. Howard then went to work to close up the business. These facts were generally known in the vicinity, but not the particulars of the trade.

At the time of the trade with Metcalf on the 4th of March, 1864, the name of Metcalf was erased from the trustee writ in favor of Grout against Reed and Metcalf, trustee, and the name of the defendant, Howard, inserted in the place of Metcalf by agreement, and Howard then agreed in writing to make the same disclosure and be subject to the same liability Metcalf would have been, that is to pay Grout if the property in his hands under the said assignment was more than sufficient to pay the prior claims; and among the property in said assignment were the horse and two wagons attached as aforesaid. The said trustee writ of said Grout was made by Fisk & Johnson.

The defendant after he took the assignment commenced disposing of the property, and employed Reed to drive the team, and deliver the meat, up to about the first of June. During this time and up to and at the time the plaintiff attached the property, the horse was kept at said Reed's, and the wagon also, and the team was used

in and about the business of the defendant. About one week before the property was attached, the defendant in this suit went to the office of Fisk & Johnson and told Fisk that as the business was pretty much closed up, he thought of shutting up the market and taking off the balance of the property, and asked Fisk what he thought about it. Fisk refused to advise him about it. Johnson was then absent. Fisk ever after he made the said trustee writ in favor of Grout, had refused to advise Howard. The defendant at this time had no one in the market but Reed. The defendant then went and inquired of Johnson if it would be safe to leave it, and was informed by Johnson that he could hire Reed in the market business as safe as any one. At the end of the week the defendant went again after the property and found that Fisk had made out a new writ in favor of Grout against Reed, and had attached the horse and the two wagons aforesaid, and put them into possession of one Jones, where the defendant found them and took away the wagons aforesaid, for which this suit is brought.

The testimony further showed that the first suit in which the defendant Howard was trusteed was continued from time to time and died out, and was abandoned and ended before that suit was brought, but no notice of the same was given to Howard until after the last suit was commenced.

The demand on which the property in question was attached, and in virtue of which the plaintiff seeks to recover, was put into Fisk & Johnson's hands for collection before said 4th of March, the date of said agreement between Metcalf and the defendant, and remained in their office till the writ was made and property attached at the direction of Grout, the plaintiff therein, by this plaintiff as deputy sheriff. It appears that Fisk & Johnson gave Howard no advice as to keeping the horse and wagons at Reed's, and that he never asked of them any advice in reference to that. It appeared that before the defendant employed Reed he asked Johnson if he could safely employ Reed to attend to selling the meat, and that Johnson told him that he could. Johnson occasionally advised him afterwards in the business.

The court found the transfer to the defendant was in good faith and for valuable and adequate consideration.

Houston *v.* Howard.

There was no evidence that the defendant purchased anything on which the horse was kept and fed on at Reed's. The defendant claimed that the property under the facts proved was not attachable as Reed's, but the court decided otherwise, to which decision the defendant excepted.

On the question of damages, the return on the execution showed a sale of the horse at the sum of $     and a deduction of $     . The sum of the amount of the sale and amount of the fees deducted were stated in the return. The officer selling the said horse had put no minute of his fees on the execution, otherwise. than as stated in his return. The court permitted the officer to amend his return on the execution by putting on the items of his fees, which was objected to. The officer then put on the items of fees. It was admitted that the officer had been long out of office and did not swear to his return. The defendant claimed his amended return was of no validity, but the court deducted from the price of the horse as stated in the sale, the sheriff's fees, aforesaid. To which the defendant also excepted.

The case was tried by the court, PECK, J., presiding, at the March Term, 1866, and judgment was rendered for the plaintiff.

*Wing & Lund*, for the defendant.

No question arises but that the change of possession was at first sufficient, and so continued till a short time before the attachment. The case finds that Reed was hired by Howard to work for him the same as any other servant under the advice of Grout's counsel that he could hire him as safely as any one else, and Reed never assumed any control over the property, and was using it as Howard's servant at the time the plaintiff took it, which fact was also of public notoriety. This does not amount to concurrent possession, so as to amount to a fraud in law. *Wilson* v. *Hooper, et al.*, 12 Vt. 653 ; *Allen* v. *Edgerton*, 3 Vt. 442 ; *Stephenson* v. *Clark et al.*, 20 Vt. 624 ; *Hall* v. *Parsons*, 17 Vt. 271 ; *Farnsworth* v. *Shepard*, 6 Vt. 521 ; *Stanley* v. *Robins*, 36 Vt. 422 ; *Hagus* v. *Robinson*, Livingston's Law Mag. April No. 1854, p. 309.

The case finds that the change of possession was actually made,

and was continued for a long time and was generally known. This is sufficient to protect it from attachment even if found in the hands of the vendor. *Farnsworth* v. *Shepard,* 6 Vt. 521 ; *Lyndon* v. *Belden et al.,* 14 Vt. 423. The possession of Reed was the possession of Howard.

When the change of possession is as much as is consistent with the nature of the case, and the sale is known to the creditor, it is valid as to him and cannot be impeached. *Sanborn* v. *Kittredge et al.,* 20 Vt. 632 ; *Stephenson* v. *Clark et al.,* 20 Vt. 624 ; where the court held that if the creditor upon reasonable inquiry could ascertain the change, it was sufficient. *Stanley* v. *Robins,* 36 Vt. 422 ; *Hagus* v. *Robinson,* before cited. But this case stands still stronger upon the facts.

Grout, and consequently his attaching officer, is estopped from claiming that the change of possession is not sufficient. *Strong* v. *Ellsworth,* 26 Vt. 366 ; *White* v. *Langdon,* 30 Vt. 599.

Fisk & Johnson were parties in law business, and the client of one is the client of the other. Public policy requires it to be so treated, and their acts will bind their client. *Kimball et al.* v. *Perry,* 15 Vt. 414.

The court erred in the rule of damages in allowing the officers fees on the execution to be deducted, under the circumstances shown. The fees were not minuted on the execution and could not be allowed. G. S. p. 89, § 29. The officer could not amend his return and add the fees after the execution had been returned ; the officer was out of office, and not under oath, and did not swear to his return. The court below could not permit him to amend.

*Fisk & Johnson,* for the plaintiff.

The attachment was valid.

1. The property was attached while in Reed's possession. Reed had possession of it with the defendant's knowledge, and by his consent. It was property he had owned and possessed before his failure. *Morre* v. *Kelley,* 5 Vt. 34 ; *Judd* v. *Langdon,* 5 Vt. 231 ; *Gates* v. *Gaines,* 10 Vt. 346 ; *Morris* v. *Hyde,* 8 Vt. 352 ; *Mills* v. *Warner,* 1 Vt. 609.

2. The defendant had only a special property in the wagon for

the payment of Reed's debts to him. The transaction was in the nature of a pledge. Reed still retained the general ownership of the property. By reinvesting him with possession and keeping and using the property the defendant lost his lien as against attaching creditors, 15 Vt. 130, and cases there cited.

3. The case discloses no fraud either upon the part of the creditor Grout, or of counsel. Grout had no knowledge that the defendant ever had a lien on the property. If he had had knowledge the case would not be different. *Morris* v. *Hyde*, 8 Vt. 352.

4. There was no error in permitting the officer to put his fees on the execution, as the return itself shows that the fees were considered and received by the officer when he made his return.

THE opinion of the court was delivered by

STEELE, J. The plaintiff claims to hold the wagons by virtue of an attachment against one Reed. The defendant claims to hold them by virtue of a prior purchase or pledge of them from Reed. The wagons were attached by the plaintiff while in Reed's actual possession. The good faith of the defendant is not in issue. The only question is whether the defendant had permitted the wagons to go back into Reed's possession in such a manner as to make them liable to attachment by Reed's creditors. It is well settled in this state that a sale or pledge of chattels, which from their nature or situation it is not impracticable to move, will, if not accompanied by a manifest and substantial change of possession, be voidable by attaching creditors. The attaching creditor in this case, claims that the change of possession of these wagons from Reed to the defendant was not manifest and substantial, but merely temporary. The wagons were taken from Reed's possession into the defendant's possession in March. The defendant allowed Reed to resume possession in the following June. About one week after this resumption, the plaintiff finding the wagons in Reed's hands, attached them as Reed's property. The ostensible nature and purpose of the defendant's possession, as well as its duration, should be considered in determining whether it was so manifest and substantial as to be unprejudiced by his allowing the property to return to the control of Reed. Reed delivered to

the defendant in March not only the wagons, but all his accounts, assets and business, and the defendant took control of the whole, including Reed's store and trade.   The object of this was to secure to the defendant certain debts, and to enable him to realize payment out of the avails of the assets.   Reed still owned the property subject to these liabilities.   When, therefore, in June the defendant, after having converted and applied upon these debts the most of this property, allowed the remainder, including the wagons, to return to the control and possession of Reed, the natural inference was that the defendant was paid, his lien extinguished, and thus the articles surrendered were Reed's absolutely.   This would have been the reasonable understanding not only of strangers but even of parties cognizant of the details of the original arrangement between Reed and the defendant.   The plaintiff under such circumstances might, we think, attach the property as Reed's, and sustain trespass against the defendant for taking it after the attachment.

The defendant claims in argument that the plaintiff is estopped from attaching this property because Fisk & Johnson, the attorneys of the creditor, whom the plaintiff represents, advised the defendant as his attorneys that he could safely allow the possession of the property to be resumed by Reed.   The legal proposition on which the claim rests does not require discussion because the case does not present such a state of facts.   The finding of the court is that " Fisk & Johnson gave Howard no advice as to the keeping of the horse and wagons at Reed's.   He never asked of them any advice in reference to that.   It appeared that before the defendant employed Reed he asked Johnson if he could safely employ Reed to attend to selling the meat, and that Johnson told him he could."

Nor do we think the case altered by the fact that the defendant had before the attachment been summoned by this creditor as the trustee of Reed for these wagons.   Even if the process had been alive and pending the creditor might have discontinued and attached the property, and even if the defendant had become by his agreement of substitution for Metcalf absolutely responsible to pay the debt, Reed was not thereby discharged.

The wagons being in fact the defendant's, as between him and

Houston *v.* Howard.

Reed; the plaintiff's recovery is limited to the balance of debt, costs and interest due on the execution against Reed, the non-payment of which is all the damage the plaintiff has suffered. This balance is the extent of the plaintiff's interest by virtue of his attachment. The defendant claims that the plaintiff cannot be allowed the whole of the balance because the officer's fees, which made a part of it, were, when the execution was returned, named in gross without the statement of items required by statute. The items were endorsed by the officer after his term of office expired, but before judgment in the case in the county court. We think the plaintiff was entitled to their allowance, at least as against the defendant's objection, the defendant not being a party to the execution and standing with relation to this property as a trespasser.

Judgment affirmed.